EDWIN A. DE SILVA, ACTING CHAIRMAN AND EXECUTIVE OFFICER OF THE BOARD OF SUPERVISORS OF THE COUNTY OF HAWAII *v.* HARRY K. BROWN, COUNTY AUDITOR, COUNTY OF HAWAII.

No. 2691.

SUBMITTED MARCH 13, 1948.        DECIDED JULY 14, 1948.

KEMP, C. J., PETERS AND LE BARON, JJ.

This is a submission upon agreed facts. Edwin A. De Silva, a member of the board of supervisors of the county of Hawaii (herein referred to as plaintiff), was, by resolution of the said board of supervisors, chosen to serve and did serve as "chairman and executive officer pro tempore" during the absence of the duly elected and qualified chairman and executive officer (herein referred to as chairman), who, from August 11, 1947, to September 22, 1947, was absent on vacation with pay and was absent on sick leave with pay from September 27, 1947, up to and including October 31, 1947. The action of the board of supervisors in choosing one of its members as chairman and executive officer *pro tempore* was in compliance with the mandatory requirement of section 6245, Revised Laws of Hawaii 1945, which reads as follows: "Acting chairman and executive officer. When and so long as the chairman and executive officer is temporarily unable to perform his duties, a member of the board shall be chosen by the board as chairman and executive officer pro tempore, and in such case, he shall have all the powers and be subject to all the duties of such chairman and executive officer."

On August 15, 1947, Harry K. Brown, the auditor of the county of Hawaii (herein referred to as defendant), issued a warrant to plaintiff for the five days' service at the statutory rate of the chairman's salary. The warrant was cashed by the plaintiff. Thereafter, the county attorney ruled that plaintiff was not entitled to be paid other than his salary as a member of the board and the auditor refused to issue further warrants for his services as chairman but continued to issue warrants for his salary as supervisor, which plaintiff rejected.

Resolution number 371, dated October 1, 1947, referred to in the submission upon agreed facts, reads as follows: "BE IT RESOLVED BY THE BOARD OF SUPERVISORS in and for the County of Hawaii that the sum

of SEVENTEEN HUNDRED THIRTY FOUR AND 18/100 DOLLARS ($1,734.18) be and the same is hereby Transferred out and from INVENTORY EXPENSES and placed to the credit of the following named account: GENERAL FUND, PAY OF ACTING CHAIRMAN $1,734.18." Notwithstanding said resolution, the defendant continues to refuse to issue a warrant or warrants to pay plaintiff as acting chairman, whereupon the parties submitted the controversy to this court upon an agreed statement of facts.

The parties have agreed in their submission that by said resolution the board of supervisors "appropriated the sum of $1,734.18 as salary and compensation for the said Edwin A. De Silva, as 'Acting Chairman and Executive Officer,' for the period beginning on August 11, 1947 and ending on October 31, 1947, at the rate of $700.00 per month plus bonus of $25.00 per month."

The salary of the chairman is $8,400 per annum, whereas the salary of a member of the board is $2,200 per annum. (Act 209 [B-107] S. L. 1947.)

Various sections of our statutes to be referred to are all sections of the Revised Laws of Hawaii 1945 unless otherwise indicated.

Plaintiff relies upon section 6233 as authorizing the board of supervisors to fix his salary as acting chairman. The pertinent part of said section provides, in effect, that the board of supervisors shall have general supervision and control of all the public affairs of the county and, without prejudice to the generality of the foregoing, have the following specific powers: "1. Salaries. To fix the salaries of all county officers, not otherwise provided for."

Plaintiff first argues that when he was chosen as chairman and executive officer pro tempore by the board of supervisors, he became a county officer whose salary is not "otherwise provided for" within the meaning of para-

graph 1 of section 6233, and that under the express authority of that paragraph the board had ample authority to fix his salary as "acting chairman and executive officer" of the board, and provide the funds for its payment.

Plaintiff next argues that if it should be decided that the specific power to adopt resolution number 371 appropriating the money to pay plaintiff a salary as chairman and executive officer *pro tempore* is not granted to the board of supervisors by paragraph 1 of said section 6233, then the board has the power to adopt said resolution and thereby fix the salary of the plaintiff for the services performed by virtue of the general authority conferred upon it by said section 6233 to exercise general supervision and control of all the public affairs of the county.

We shall first consider the claim of plaintiff that section 6233 authorizes the board of supervisors to provide for and fix the compensation of a chairman and executive officer *pro tempore*. Although there is a decided conflict among the authorities as to the right of a public official to recover compensation for his official services when no provision therefor has been made by statute, we find the weight of authority to be that "Any right which a public officer may have to a salary or compensation must generally be found in some provision of the law, for whatever may be the character of the compensation, whether an annual salary, a per diem allowance, or fees for particular services, it must depend upon the will of the people speaking through their Constitution, statutes or ordinances. If no compensation is fixed by law, the services of the officer may be regarded as gratuitous." 43 Am. Jur., Public Officers § 341.

A leading case in point on the application of section 6233 to the facts of this case is *Woods* v. *Potter,* 8 Cal. App. 41, 95 Pac. 1125. In that case the charter of the

City of San Diego contained provisions relating to compensation of all the charter officers, except the members of the common council, as to whom the charter was silent. Ten officers were given fixed annual salaries; the common council was authorized to fix the salaries of two and the deputies of one and the members of five boards were to serve without compensation. Woods was elected a member of the common council and between the date of the election and the date of his induction into office the common council passed an ordinance creating a salary for members of the common council.

The plaintiff claimed that authority to pass the ordinance was vested in the common council by either one or both of two clauses of the charter under which the City of San Diego was organized. The first clause authorized the common council "To make rules and regulations for the government of all servants, employees, officers and departments, and to fix the fees and charges for all official services, and to fix salaries and wages not otherwise provided by general laws or by this charter." The second clause relied upon reads as follows: "The annual salaries of the officers and the compensation of the employees of the city shall be as follows: [Salary for mayor and other officers as to whom the amount to be received is fixed.] And all other officers and employees as may be fixed by the Common Council, and all salaries shall be payable monthly."

In disposing of plaintiff's claim to the salary fixed by the ordinance, the court said: "The two clauses of the charter relied upon here as granting the power relate generally to servants and employes, as well as officers of the corporation. The salary of no other charter officer of the city is dependent upon the existence of this power."

The court further commented that members of city councils occupy a position of trust, and are bound to the

same measure of good faith toward their constituents that a trustee is to his *cestui que* trust; that the mere fact that a member of such body acts as such in connection with any matter in which he is interested vitiates the transaction; that it will be presumed that under such circumstances self-interest prevents the individual member from protecting the rights of the public against his own; that no contractual relations arise between an officer and the State by reason of the election or appointment of the former; that to recover he must show a right by law to compensation.

Summing up, the court said: "In order, then, that a charter officer shall be entitled to compensation for his services, the burden is upon him to show that either the charter which created the office, or the legislative or constitutional authority under which the charter was framed, attached to that office the right to receive pay for his services. Such showing has not been made here. The power to 'make rules and regulations for the government of all servants, etc., . . . and to fix salaries and wages not otherwise provided by general law or by this charter,' or the recital that 'all other officers and employees as may be fixed by the Common Council,' cannot be held to be a sufficient showing for this purpose. We have not overlooked the fact that in the section relating to official bonds there appears the clause 'all *salaried* officers of this city, other than the Mayor and members of the Common Council, must,' etc. Conceding that in the interpretation of a charter containing an ambiguous statement as to the right of the members of the city council to a salary this clause might be considered in determining the intentions of the charter makers, it can have no application where the charter is devoid of any authorization whatever. Our conclusion in this regard rests upon the fact that it nowhere appears that the charter makers intended that the

members of the common council should be compensated for their services."

We conclude that section 6233 does not constitute an express authorization for the board of supervisors to provide for or fix the salary of one of the members of the board called to duty in lieu of the chairman and executive officer when absent with pay.

Following his argument based on section 6233, plaintiff claims a right to compensation by virtue of the following stipulated facts:

"That the said Edwin A. De Silva, upon notification that he had been chosen by the Board of Supervisors by the two resolutions aforesaid to act as 'Acting Chairman and Executive Officer' of the County of Hawaii, consented to take on and perform the duties of the Chairman and Executive Officer of the Board of Supervisors of the County of Hawaii upon his understanding and belief that he would be granted adequate compensation by the Board of Supervisors of the County of Hawaii for the services to be performed by him as such 'Acting Chairman and Executive Officer' and that the said Edwin A. De Silva would not have undertaken the duties of the said office except upon his belief and understanding that he would be compensated for the services to be performed by him in that capacity. * * *

"That said Edwin A. De Silva notified his colleagues on the Board of Supervisors at or about the time when said resolution (Exhibit B) was adopted that he, the said Edwin A. De Silva, would act as 'Acting Chairman and Executive Officer' of the Board but that he would claim additional compensation for acting in that capacity."

Plaintiff argues that the foregoing constitutes an enforceable agreement with the county authorities or, if not, that it created at least a moral obligation on the part of the board of supervisors to compensate the plaintiff

for the services so rendered, unless some direct provision of the statute expressly forbids the adoption of any such resolution or appropriation for such purpose.

It is apparent from a mere reading of the portion of the submission above quoted that, assuming the right of the supervisors to so contract, the essentials of a contract are lacking. Plaintiff cites no authority in support of his claim of an actionable contract. In support of his claim that a moral obligation was created, he cites *In re Saludes,* 34 Haw. 79. That case involved an entirely different state of facts and is not authority for the contention of the plaintiff in the case at bar.

"The relation which exists between a public official and the corporation is one created by law and not partaking in the least of the nature of a contract. A public official is regarded in respect to the performance of his public and official duties as a trustee for the corporation which he represents and for its interests whatever may be their character. The duties of a public official are those attached by law to a particular office; they are fixed and prescribed by law and the question of compensation is dependent upon the terms of the law which creates the office and prescribes its duties. If there is no compensation provided, the services must be performed gratuitously. If one is not willing to enter upon or continue in public office and discharge its duties for the compensation as fixed by statutes regulating the amount, he is at perfect liberty to decline the office or tender his resignation. The performance of a service attached to a public office carries with it no contract right of compensation. The claims of a public official of this character are dependent upon the terms of a particular law." 2 Abbott, Munic. Corp. § 685.

Plaintiff admits that if neither the provision giving the board general supervision and control of all the public affairs of the county nor the specific power to fix the

salaries of all county officers not otherwise provided for applies, then there is no express statutory authorization for the board to provide for or fix the salary of the member called to duty in lieu of the chairman. In that case he asserts that it becomes necessary to attempt an interpretation of the law for the purpose of arriving at what he asserts must have been the intention of the legislature in that regard by an analysis of the sections referred to and other sections of the law which have reference to a somewhat similar situation. Reference is made to section 6245, *supra,* and to section 6208, which reads as follows: "Offices. All county officers shall have their offices at the county seat which shall be open for public business on business days from 8:00 o'clock in the morning to 4:00 o'clock in the afternoon, excepting on Saturdays when they may close at noon, and the clerk, auditor, treasurer and county attorney, together with the employees serving under them, respectively, shall be in their respective offices for the transaction of public business during such hours, excepting when the performance of their official duties requires their presence elsewhere, or when they, in the case of employees, are excused by the heads of the respective offices; provided, that the one hour at noon for luncheon shall be considered as an hour during which actual service is performed. The board of supervisors shall also maintain their offices at the county seat." Section 479 is the only other section of our statutes called to our attention by plaintiff as bearing on the issue under consideration. The pertinent provisions of section 479 follow: "The superintendent of public instruction, the surveyor, the commissioner of public lands, the superintendent of public works, the president of the board of health, the president of the board of commissioners of agriculture and forestry and any other officer for the performance of whose duties in his absence or illness no

other provision is made by law, may, with the approval of the governor, designate some other officer in his department, bureau or office to act in his temporary absence or illness. * * *

"Such person so designated shall, during the temporary absence or illness of the head of such office, have all the powers of the head of such office and shall be known as the acting superintendent, surveyor, commissioner or president, as the case may be, but shall not be entitled to any additional compensation while so acting."

The defendant, however, calls our attention to Act 27 (series A-16) Session Laws of 1947, which adds a new paragraph to section 552 as follows:

"(c) Whenever any officer or employee of the Territory or of the several counties who is entitled to sick leave with pay under this section has been granted and has used up the maximum amount of such leave that may be granted under this section and the rules and regulations promulgated hereunder, and such officer or employee is granted further sick leave without pay, the officer or employee who is required by the department head to perform the full duties and to assume the full responsibilities of such absent officer or employee shall be entitled to and be paid the compensation provided by law for the position of the absent officer or employee if such compensation is higher than his own. Such higher compensation shall be paid to the substitute as long as the absent officer or employee remains on sick leave without pay and as long as the substitute performs the full duties and assumes the full responsibilities of the absent officer or employee."

Plaintiff argues that it is difficult to believe that the legislature intended that a citizen elected to the office of supervisor, which requires only about three days of public service per month, would be required to perform the duties of "acting chairman and executive officer," which requires

practically eight hours per day of service through twenty-six and twenty-seven days per month for the compensation of a supervisor. This is practically the minority view announced in the pioneer case of *Bohart et al.* v. *Anderson,* 24 Okla. 82, 103 Pac. 742, 20 Ann. Cas. 142, to the effect that when the compensation of an officer is not fixed by law at the time he renders a service but it clearly appears that it was the intention of the lawmakers that he should be compensated, he is entitled to a reasonable compensation to be determined by the proper tribunal.

Cases supporting both the minority and the majority view are collected in a note following *Bohart* v. *Anderson* in 20 Ann. Cas. 148.

We think, however, that under the minority rule the plaintiff has failed to establish his thesis that the legislature must not have intended that a member of the board should serve as "acting chairman and executive officer" for the compensation of a supervisor. He attempts to escape the implications of Act 27, *supra,* by arguing that said Act applies to departmental employees only. This argument ignores some of the most significant provisions of the Act. Its language embraces every officer and employee of the Territory and of the several counties. The duly elected chairman and executive officer for whom plaintiff substituted is a county officer and the plaintiff, also a county officer, was chosen by the statutory method as his substitute. Plaintiff argues that because plaintiff was not required to serve by a "department head" the Act has no application.

The judiciary committee of the senate, in recommending the passage of the bill which became Act 27, stated its purpose as follows:

"The purpose of this bill is to secure to the person performing the duties of a higher office or employment than his own the salary of such office or employment when

such person is discharging those duties by reason of the fact that the nominal holder of the office or employment is ill, has exhausted his sick leave with pay and is enjoying an extension of sick leave without pay." S. J. 1947, p. 192.

Not only is the statute providing for county government and prescribing the duties of the various county officers silent on the question of extra compensation for the member of the board chosen as "chairman and executive officer pro tempore" when the chairman and executive officer is absent, but the legislature has, by Act 27, *supra,* provided for extra compensation for all officers, both territorial and county, when called to higher duty under very similar circumstances as a substitute for another who is absent "without pay" and has, by section 479, prohibited extra compensation for one serving as a substitute temporarily for certain higher officers absent either with or without pay.

In accordance with the agreement of the parties as to the character of the judgment to be entered in the event the contention of the auditor is sustained, it is hereby ordered, adjudged and decreed that this proceeding be and the same is hereby dismissed.

*H. Irwin* for plaintiff.

*T. Okino,* County Attorney Hawaii County, for defendant.